IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN A. SOSINAVAGE,<br><br>               Plaintiff,<br><br>     v.<br><br>JOHN SCOTT THOMSON, et al.,<br><br>             Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-3292 (JBS-AMD)<br><br>**OPINION** |

APPEARANCES:

Cheryl L. Cooper, Esq.
LAW OFFICES OF CHERYL L. COOPER
342 Egg Harbor Road, Suite 1-A
Sewell, NJ 08080
    -and-
Paul D. Brandes, Esq.
VILLARI BRANDES & GIANNONE, PC
8 Tower Bridge
161 Washington Street, Suite 400
Conshohocken, PA 19428
    Attorneys for Plaintiff

Christine O'Hearn, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
    Attorney for County Defendants

Daniel Edward Rybeck, Esq.
John C. Eastlack, Jr., Esq.
Lilia Londar, Esq.
WEIR & PARTNERS
250 Fries Mill Road, 2nd Floor
Turnersville, NJ 08012
    Attorneys for City Defendants

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

Plaintiff John A. Sosinavage (hereinafter, "Plaintiff") brought this employment action against the City of Camden, the County of Camden, and John Scott Thomson, Orlando Cuevas, Michael Lynch, and Louis Vega in their official capacities as employees of the City of Camden, the County of Camden, or both (collectively, "Defendants"). Plaintiff, a former Lieutenant in the Camden City Police Department which was disbanded and superseded by the Camden County Police Department, generally alleges that Defendants engaged in retaliation against him based on protected activity in violation of the First Amendment and 42 U.S.C. § 1983 and/or age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"). This Opinion addresses only Plaintiff's claims that the County Defendants discriminated and/or retaliated against Plaintiff by failing to hire him, and we examine here none of Plaintiff's claims against the City Defendants.[1]

---

[1] The Second Amended Complaint contains two distinct components:

> (1)  Counts One through Seven allege discrimination and/or retaliation by the City of Camden and Chief John Scott Thomson, Deputy Chief Orlando Cuevas, Deputy Chief Michael Lynch, and Louis Vega in their capacity as former employees of the City of Camden and City of Camden Police Department (collectively, "the City Defendants") for transferring Plaintiff out of his

This matter comes before the Court on the County Defendants' motions for summary judgment on Counts Eight, Nine, and Ten of the Second Amended Complaint [Docket Item 71] and to strike the Declaration of Darnell Hardwick and exhibits in Plaintiff's papers submitted in opposition to the County Defendant's motion for summary judgment. [Docket Item 149.]

The principal issues to be decided are, all discovery having been concluded, whether there are genuine issues of material fact from which, giving all reasonable inferences to Plaintiff, a jury could reasonably find that the County Defendants have failed to hire Plaintiff for the Camden County

---

position as Lieutenant in charge of the administrative section overseeing all disciplinary matters of Camden Police Internal Affairs, forcing him to work midnight and work split shifts, assigning him to supervise those identified by the administration as "problem" officers, requiring him to attend meetings without overtime compensation, assigning him a schedule where he was the only officer in the Camden City Police Department forced to work every weekend, and unfairly writing up and/or disciplining him after he objected to the City Defendants' instructions to violate the Attorney General Guidelines; and

(2) Counts Eight through Ten allege discrimination and/or retaliation by the Defendants County of Camden, Police Chief Thomson, Deputy Chief Cuevas, Deputy Chief Lynch, and Louis Vega in their capacity as employees of the County of Camden and County of Camden Police Department (collectively, "the County Defendants") for failing to hire Plaintiff.

[Docket Item 44.] Only Counts Eight through Ten are the subject of this motion for summary judgment. [Docket Item 71-2 at 9 n. 1.]

Police Department due to retaliation in violation of his First Amendment rights, and whether the County Defendants have failed to hire Plaintiff due to age discrimination.

As relevant to his claims against the County Defendants, Plaintiff concedes he never worked for or applied to the Camden County Police Department. Nevertheless, Plaintiff asserts that the County Defendants discriminated and/or retaliated against him by not sending a letter expressly inviting Plaintiff to apply for employment when his name was included on a state-wide reemployment list, commonly referred to as a "Rice List." Since Plaintiff was aware of the employment opportunity with the Camden County Police Department and made a deliberate decision to not apply, and because Plaintiff adduced no evidence that the Camden County Police Department hired any officer who did not fill out an application and questionnaire other than Police Chief John Scott Thomson, and for the reasons discussed below, the motion for summary judgment will be granted in its entirety and all claims against the County Defendants will be dismissed.[2]

---

[2] The County Defendant's motion to strike the Declaration of Darnell Hardwick [Docket Item 149] will also be granted in part and denied in part.

The motion will be granted to the extent Plaintiff seeks to rely on any purported expert opinion, argument, or legal conclusion by Mr. Hardwick, who has no academic background or experience in law enforcement and who has not been certified as an expert witness in this case. Cf. Yazujian v. Petsmart, 2018 WL 1830931, at *2 (3d Cir. Apr. 17, 2018) (holding that district court did

4

not abuse its discretion in declining to permit witness to testify as an expert in retail safety where he had no academic background or relevant training or work experience other than a job as a stock clerk).

The Hardwick Declaration expresses opinions on police officer qualifications, police personnel records, Civil Service Commission records and rules, and credibility of other witnesses' statements. Not only are such opinions regarding specialized matters of personnel rules and practices inadmissible because Mr. Hardwick has not been identified as an expert under Rule 702, but they also may not be presented, as many are here, as legal arguments and conclusions in an affidavit or declaration pursuant to the Local Rules, which provide in relevant part:

> [D]eclarations . . . shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

L. Civ. R. 7.2(a). A few examples of improper opinions and legal conclusions in the Hardwick Declaration suffice to prove the point:

- Paragraph 5: "The Certification of Defendant Michael Lynch, from the <u>Carmichael</u> matter contains numerous inaccurate statements which are verified by the documents attached to my Declaration."

- Paragraph 6: "Some of the representations of by the County Defendants in both the <u>Carmichael</u> and <u>Sosinavage</u> matters also are not accurate or truthful and are proven inaccurate through the documents I have provided to Plaintiffs' counsel in preparing my declaration."

- Paragraph 9: "When the County wanted to establish the CCMPD, in order to avoid the Civil Service Rules for hiring and promotions, they were forced to apply to the CSC for a 'pilot program.'"

- Paragraph 13: "However, the CSC Pilot Program Order does contain a provision which prohibited 'rank

jumping,' and included an example of prohibited promotions."

- Paragraph 31: "This is consistent with the provisions of N.J.A.C. 4A:4-7.1(A)(b)."

- Paragraph 35: "The representation by Mr. Goldberg, to the Court in that matter was inaccurate."

- Paragraph 62: "Neither of these two (2) individuals were PTC certified."

- Paragraph 64: "Upon receipt of these documents, I reviewed the content and determined that all 8 of these applicants were <u>not</u> PTC certified at the time of hire; had no prior police experience; and were all civilians, forcing the CCMPD to pay for and have these individuals trained at the Police Academy. According to my review, each of these eight (8) individuals did not meet the requirements for hire under the Pilot Program."

- Paragraph 65: "Each of these 8 individuals were younger than 40 years of age, and none were PTC certified. These individuals were hired by CCMPD over former Camden City Police Officers who had applied for employment with the CCMPD prior to the dissolution of the Camden Police Department, and during the Pilot Program."

- Paragraph 71: "Each of the three (3) above officers identified above, Sandrock, Kunkle, and DeSantis, were and are younger than Plaintiff Sosinavage, and less qualified than Sosinavage."

[Docket Item 83-8.] In accordance with L. Civ. R. 7.2(a) and Fed. R. Civ. P. 56(e)(requiring that a declaration filed in connection with a motion for summary judgment must "be made on personal knowledge. . ."), the Court will exercise its discretion to disregard all expert opinion, argument, or legal conclusions in the Hardwick Declaration.

The motion to strike will otherwise be denied. Notably, the Court will consider the exhibits attached to the Hardwick Declaration, including several documents obtained by Mr.

## II.  BACKGROUND[3]

The motions pending before the Court were brought by the County Defendants and do not address any of the allegations against the City Defendants. [Docket Item 71-2 at 9 n. 1.] Accordingly, the Court recounts only those facts and the procedural history relevant to Plaintiff's claims against the County Defendants (Counts Eight through Ten).

### A.  Factual Background

1.  <u>Formation of the Camden County Police Department and the Pilot Program</u>

On August 25, 2011, the City of Camden, the County of Camden, and the State of New Jersey entered into a Memorandum of Understanding, whereby the County of Camden agreed to create a Camden County Police Department that would offer police services to municipalities within Camden County, including the City of

---

Hardwick through Open Public Records Act requests that were created and/or maintained by the County Defendants. To the extent that Mr. Hardwick's statements in his Declaration lay an evidentiary foundation for source or authenticity of the documents he has attached, such statements are within his personal knowledge and will be considered in opposition to the County Defendants' motion for summary judgment.

[3] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Amended Complaint [Docket Item 44] when appropriate, the County Defendant's Statement of Undisputed Material Facts [Docket Item 71-1], Plaintiff's Response to Statement of Material Facts [Docket Item 140], the Hardwick Declaration [Docket Item 83-8] only to the extent admissible in note 2, <u>supra</u>, and related exhibits and documents. Where not otherwise noted, the facts in this section are undisputed by the parties.

Camden. [See Docket Item 71-6.] The Camden County Board of
Chosen Freeholders subsequently authorized the creation of the
County Police Department pursuant to N.J.S.A. 40A:14-106. [See
Docket Item 71-7.]

On December 27, 2012, the Civil Service Commission passed a
proposed plan for laying off all uniformed police officers in
the Camden City Police Department by April 30, 2013. [See Docket
Item 71-8.] This layoff plan was approved by the Camden City
Council on January 4, 2013. [See Docket Item 71-9.] On April 30,
2013, all Camden City Police Officers were officially laid off
and the Camden City Police Department was dissolved. [See Docket
Item 71-5 at ¶ 10; see also Pl. Dep. Tr. 31:19-32:1.] The Camden
County Police Department assumed all police functions in the
City of Camden the following day, on May 1, 2013. Redd v.
Bowman, 233 N.J. 87, 95 (2015).

By civil service order, the Camden County Police Department
established a pilot program for filling positions (hereinafter,
the "Pilot Program"). [See Docket Item 71-10.] The purpose of
the Pilot Program was "to provide for expeditious appointment of
qualified law enforcement officers to staff the Camden County
Police Department." [Id. at 2.] Under the Pilot Program, Camden
County Police Officers were to be drawn from five sources,
including the so-called "Rice List," with "no specific number of
County Police Officers or superior County Police Officers drawn

8

from any single source." [Id. at 3.] According to the Order
Establishing the Pilot Program, "[a]ll police officers
expressing an interest in employment by the new Camden County
Police Department will be required to submit an application and
questionnaire as an initial screening device." [Id.] The Pilot
Program was set to last from November 1, 2012 through October
31, 2013. [Id. at 4.]

### 2.   Plaintiff John Sosinavage

John A. Sosinavage is a forty-six-year-old Caucasian male.
[Docket Item 44 at ¶ 11; Docket Item 71-4 ("Pl. Dep.") Tr. 10:9-
12.] Between September 12, 1994 and April 30, 2013, he was
employed with the Camden City Police Department. [Pl. Dep. Tr.
29:17-19; 31:17-32:7.] On April 30, 2013, Plaintiff was laid
off, along with all other remaining Camden City Police Officers
[Pl. Dep. Tr. 31:19-32:1], as discussed above. At the time he
was laid off by the Camden City Police Department, Plaintiff was
a Lieutenant. [Pl. Dep. Tr. 28:12-14.]

Plaintiff testified at a deposition that he became aware
the Camden City Police Department might be disbanded and
replaced by a Camden County Police Department during a meeting
with the Camden County Freeholder Director in February of 2011.
[Pl. Dep. Tr. 33:4-18.] Plaintiff subsequently spoke out against
the creation of the Camden County Police Department and the
Pilot Program in several union meetings. [Pl. Dep. Tr. 126:13-

127:4.] Prior to and during the Pilot Program, Plaintiff and others in his union also advocated in favor of a strategy whereby Camden City Police Officers would deliberately not apply for positions with the Camden County Police Department to put pressure on the County and help negotiate a better deal for the Camden City Police Officers. [See, e.g., Pl. Dep. Tr. 81:11-14 ("[I]f nobody from Camden signs up, they can't do it without us. So don't sign up. You know, . . . make the County come to us and negotiate."); Pl. Dep. Tr. 82:23-25 ("The strategy was stick together, get an agreement, everybody goes to the agency, to the new agency.").] Plaintiff told others on multiple occasions that he did not want to work for the Camden County Police Department and that he would reject a job with the Camden County Police Department if a position was offered. [Pl. Dep. Tr. 83:1-16.]

Plaintiff testified that he received several emails in the fall of 2012, including one from Deputy Chief Lynch, which provided guidance on how to fill out a resume and how to apply for employment with the Camden County Police Department during the Pilot Program. [Pl. Dep. Tr. 66:13-67:22.] One of the emails Plaintiff received during this period included an application for a position with the Camden County Police Department. [Pl. Dep. Tr. 67:3-22.] Plaintiff was aware of the April 1, 2013 application deadline to the Camden County Police Department during the Pilot Program. [Pl. Dep. Tr. 80:3-81:22.] He made a

deliberate decision to not apply for employment with the Camden
County Police Department. [Pl. Dep. Tr. 75:21-24.] Instead, he
applied for placement on the Rice List on April 30, 2013. [See
Docket Item 71-18.] Plaintiff never worked for or applied to the
Camden County Police Department. [Pl. Dep. Tr. 75:4-24.]

**B.    Procedural History**

Prior to the 2011 decision to form the Camden County Police
Department, on April 20, 2010, Plaintiff and a fellow City
Police Officer, Lieutenant Anthony Carmichael, filed a lawsuit
in New Jersey Superior Court against the City Defendants. [See
Docket Item 71-17.] In the Superior Court action, Plaintiff and
Lt. Carmichael claimed that the City Defendants retaliated and
discriminated against them by, inter alia, transferring them out
of Internal Affairs, forcing them to work split shifts,
requiring them to attend meetings without overtime compensation,
and demeaning them in front of peers after they objected to the
City Defendants' instructions to violate the Attorney General
Guidelines. [Id. at ¶¶ 88-90.] The Superior Court complaint was
dismissed without prejudice. [Pl. Dep. Tr. 25:1-5.]

On May 22, 2014, Plaintiff refiled his claims in federal
court against the City of Camden, the County of Camden, and
Officers John Scott Thomson, Orlando Cuevas, Michael Lynch, and
Louis Vega in their individual and official capacities as
employees of both the City of Camden and County of Camden

[Docket Item 1],[4] which was subsequently amended as a matter of right. [Docket Item 4.] With leave of the Court [Docket Item 36], Plaintiff filed the Second Amended Complaint on October 9, 2015. [Docket Item 44.]

On September 15, 2016, the County Defendants filed the pending motion for summary judgment on counts Eight, Nine, and Ten. [Docket Item 71.] The Court granted Plaintiff an extension of time to file opposition to the County Defendants' motion for summary judgment until November 17, 2016. [Docket Item 74.] Through an extraordinary series of delays due to illness and other complications, Plaintiff's opposition was not filed until more than one year later, on December 31, 2017. [Docket Items 140, 142.] The County Defendants timely filed a reply brief [Docket Item 155], along with updated Declarations by Defendants Lynch and Thomson. [Docket Item 155-1.] The County Defendants also filed a motion to strike the declaration of Darnell Hardwick with exhibits in its entirety [Docket Item 149], which Plaintiff had filed as an attachment to his motion for reconsideration. [Docket Item 83.] Plaintiff filed a letter brief in opposition to the motion to strike. [Docket Item 158.]

---

[4] Around the same time, Lt. Carmichael filed a separate federal action, which is also set before the undersigned, Carmichael v. Thomson, et al., 14-3323-JBS-AMD (D.N.J. filed on May 27, 2014).

On April 20, 2018, the Court convened oral argument on the
pending motions. [Docket Item 173.]

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial
burden of demonstrating that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). Once a properly supported
motion for summary judgment is made, the burden shifts to the
non-moving party, who must set forth specific facts showing that
there is a genuine issue for trial. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for
summary judgment, the court is required to examine the evidence
in light most favorable to the non-moving party, and resolve all
reasonable inferences in that party's favor. Scott v. Harris,
550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287
(3d Cir. 2014).

A factual dispute is material when it "might affect the
outcome of the suit under the governing law," and genuine when
"the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson, 477 U.S. at 248. The
non-moving party "need not match, item for item, each piece of
evidence proffered by the movant," but must simply present more
than a "mere scintilla" of evidence on which a jury could

13

reasonably find for the non-moving party. <u>Boyle v. Cty. of</u>
<u>Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>,
477 U.S. at 252).

**IV.  DISCUSSION**

Plaintiff's claims against the County Defendants can be
effectively divided into two categories: (1) claims of age
discrimination in violation of NJLAD (Count Ten); and (2) claims
alleging that the County Defendants' failure to hire him
constituted retaliation under the First Amendment in violation
of 42 U.S.C. § 1983 (Counts Eight) and for municipal liability
against the County under <u>Monell</u> (Count Nine). The Court will
address each category of claim in turn.

**A.  Plaintiff's Age Discrimination Claim (Count Ten)**

In Count Ten of the Amended Complaint, Plaintiff alleges
that the County Defendants' failure to hire him constituted age
discrimination in violation of NJLAD. The County Defendants move
for summary judgment on this claim, arguing that, while
Plaintiff is a member of a protected class,[5] he has failed to
make a <u>prima facie</u> case of age discrimination because he neither
applied for nor was rejected from a position of employment with
the County Defendants, and Plaintiff cannot identify any younger

---

[5] The County Defendants concede Plaintiff is a member of a
protected class because he is over forty years of age. [Docket
Item 71-2 at 14.]

officer who was hired instead of him or any position with the
Camden County Police Department that remained open.
Alternatively, the County Defendants argue that Plaintiff cannot
rebut the County Defendants' proffered legitimate and
nondiscriminatory reason for not hiring Plaintiff. Plaintiff, in
turn, argues that the County Defendants discriminated against
him based on age by not sending him a letter expressly inviting
him to apply for employment even though his name was on the Rice
List. The Court finds there is no dispute of material fact that
Plaintiff cannot make a prima facie case on at least two of the
four prongs for an NJLAD claim of age discrimination.
Accordingly, the Court will not reach the County Defendants'
alternative arguments.

New Jersey and federal courts analyze NJLAD employment
discrimination claims under the burden-shifting framework
of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct.
1817, 36 L.Ed.2d 668 (1973). See Ewell v. NBA Properties, Inc.,
94 F. Supp. 3d 612, 620 (D.N.J. 2015); Battaglia v. United
Parcel Serv. Inc., 214 N.J. 518, 546-47 (2013). The McDonnell
Douglas framework first requires the plaintiff to establish a
prima facie case of age discrimination, at which point the
burden shifts to the defendant employer to provide a legitimate
nondiscriminatory rationale for their employment decision.
McDonnell Douglas Corp., 411 U.S. at 802-03. Once the defendant

has proffered their legitimate explanation, the plaintiff may prevail if she can prove the defendant's purported reasoning was merely a pretext and that the adverse employment action was actually motivated by discriminatory intent. Id. at 802.

In the present case, the parties agree that to make a prima facie case of age discrimination for failure to hire, a plaintiff must generally establish: (1) he belongs to a protected class; (2) he applied for and was qualified for the job; (3) despite being qualified, he was rejected; and (4) the employer either ultimately filled the position with someone younger to permit an inference of age discrimination, or continued to seek applicants from among those having the plaintiff's qualifications. (Compare Def. Br. at 14 (citing Fowle v. C&C Cola, 868 F.2d 59, 61 (3d Cir. 1989), with Pl. Opp. Br. at 6 (same).)[6]

_____

[6] Nonetheless, Plaintiff argues that, in light of the "unique factors of this case," the Court should modify the typical prima facie requirements and find as follows:

> (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the position of police officer at all times during the Pilot Program Period; (3) **despite being qualified for the position, Plaintiff was not sent a letter advising of an opening and inviting him to apply**; and (4) the County filled the positions with individuals that were sufficiently younger or the County continued to seek applicants from a pool of applicants significantly younger and less qualified.

(Pl. Opp. Br. at 6-7) (emphasis added). Notably, Plaintiff's proposal would eliminate the requirement in a failure-to-hire

At a minimum, Plaintiff fails to satisfy the second prong of his prima facie failure-to-hire case because he did not apply for a position with the Camden County Police Department. Plaintiff testified that he received an application for the Camden County Police Department and instructions on how to apply via email during the fall of 2012. [Pl. Dep. Tr. 66:13-67:22.] Plaintiff also testified that he made a conscious decision to not submit an application or questionnaire to the Camden County Police Department. [Pl. Dep. Tr. 75:21-24.] Most importantly, Plaintiff admitted he told others he did not want to work for the Camden County Police Department and **would not accept a position if one had been offered to him at that time**. [Pl. Dep. Tr. 83:1-16] (emphasis added).

Plaintiff maintains that he did not apply because he "felt it would be useless to put [my application] in, and that my best path for employment at the County would be to just be laid off, go on the Rice List, and wait for my letter on the Rice List." [Pl. Dep. Tr. 84:9-19.] But Plaintiff has adduced no evidence

---

employment discrimination case that a plaintiff must apply for the position he claims a defendant failed to hire him into. But Plaintiff does not cite a single case in support of his proposed test, nor does he provide a compelling reason for the Court modifying the prima facie requirements in this instance. Accordingly, the Court will decline Plaintiff's invitation and instead apply the well-established prima facie requirements for age discrimination in a failure-to-hire case set forth in Fowle, 868 F.2d at 61. See also Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).

that the Camden County Police Department hired anyone (from the Rice List or otherwise) who did not submit an application and questionnaire [Pl. Dep. Tr. 88:22-89:5], other than Defendant Thomson, who became Chief of the new Camden County Police Department.[7] [Docket Item 83-8 at ¶ 44.] Further, whether Plaintiff was formally "invited" to apply is immaterial because he knew of the application opportunity and failed to apply through his own choice.

Importantly, Plaintiff has not alleged he was somehow prevented from applying by the County Defendants, nor even that he was misled into not applying. Thus, this is not a case where Plaintiff "was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile." Murray v. Beverage Distribution Ctr., 533 Fed. App'x 98, 102-03 (3d Cir. 2013); see also Bates v. Tandy Corp., 2005 WL 1798825, at *6 (E.D. Pa. Aug. 1, 2005) (granting summary judgment in favor of defendant employer where plaintiffs were "undoubtedly qualified," but failed to make an application), aff'd, 186 Fed. App'x 288 (3d Cir. 2006).

---

[7] Plaintiff does not argue he was qualified to be appointed as Chief of the Camden County Police Department, so the Chief's method of selection is not relevant.

Further, Plaintiff cannot satisfy the third prong that he was "rejected" for employment with the new department.

Fundamentally, Plaintiff has presented no evidence that he was treated any differently from younger officers who were similarly situated, that is members of the Camden City Police Department who did not apply to the Camden County Police Department. There is no evidence that any officer who failed to apply was hired by the Camden County Police Department. The County Defendants never were called upon to make a decision to hire or reject this non-applicant. The law does not require them to answer a hypothetical of whether they would have selected him if he was interested in applying. Since Plaintiff was aware of the employment opportunity with the Camden County Police Department and never applied for or was rejected from a position, he cannot make out a prima facie case against the County Defendants for failing to hire him due to age discrimination. It is indeed legally frivolous to argue otherwise. Accordingly, summary judgment will be granted in favor of the County Defendants on Count Ten.

**B.    Plaintiff's Retaliation Claim (Count Eight)**

In Count Eight of the Second Amended Complaint, Plaintiff alleges that the County Defendants retaliated against him based on protected First Amendment activity, including his participation in legal challenges against the County Defendants

when they were City employees and speaking out against the Pilot Program and formation of the Camden County Police Department during union meetings. The County Defendants seek summary judgment on Plaintiff's retaliation claim because he has failed to produce evidence of a link between any protected speech in which he engaged and any purported retaliatory action on the part of the County Defendants.

In order to make out a claim of First Amendment retaliation under 42 U.S.C. § 1983, a plaintiff must show that: 1) the plaintiff engaged in activity protected by the First Amendment (Prong One); 2) the defendant took retaliatory action against the plaintiff sufficient to deter a person of ordinary firmness from exercising his or her rights (Prong Two); and 3) a causal nexus existed between the protected activity and the retaliation (Prong Three). Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); see also Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Assuming arguendo that Plaintiff's prior litigation efforts and public statements opposing the Pilot Program and formation of the Camden County Police Department constitute protected activity under the First Amendment (Prong One), Plaintiff has failed to establish that the County Defendants took any action against him, let alone action that was retaliatory (Prong Two). As discussed supra, Plaintiff never applied for a position with

the Camden County Police Department, and Plaintiff has adduced
no evidence that he was treated differently by the County
Defendants than any other similarly situated Camden City Police
Officer with respect to the opportunity to apply for a spot in
the new department. There is simply no evidence that the County
Defendants retaliated against Plaintiff by not hiring him. To
the contrary, the record plainly establishes that Plaintiff was
not hired by the Camden County Police Department because of his
own inaction (i.e., Plaintiff's failure to apply). A fortiori,
Plaintiff cannot prove a causal nexus between any purported
retaliatory action and his protected activity (Prong Three). For
these reasons, summary judgment will be granted in favor of the
County Defendants on Count Eight.

### C.   Plaintiff's Monell Claim (Count Nine)

In Count Nine of the Second Amended Complaint, Plaintiff
alleges that Camden County and the other County Defendants
acting in their official capacities adopted or followed a
municipal custom or policy that deprived Plaintiff of his First
Amendment right to petition or deprived him of due notification
of openings in the Camden County Police Department. Plaintiff
asserts that such a violation gives rise to § 1983 municipal
liability against the County Defendants pursuant to Monell v.
Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978), and its

progeny. The County Defendants move for summary judgment on these claims.

In general, the elements of municipal liability under § 1983 require proof that: (1) a plaintiff suffered a constitutional violation and; (2) an official municipal policy or custom was the moving force behind the constitutional violation. Where a municipal policymaking official is sued in his or her official capacity, the claim is treated as a suit against the municipality – here, the County of Camden. See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 580 (3d Cir. 2004). An "official policy or custom" may include, as relevant to the allegations of Count Nine, a rule or regulation promulgated, adopted, or ratified by the municipality's legislative body, see Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); a policy statement or decision that is officially made by the municipality's official directing or authorizing the violation or agreeing to a subordinate's decision to engage in the violation, see LaVerdure v. Cty. of Montgomery, 324 F.3d 123, 125 (3d Cir. 2003); Beck v. City of Pittsburgh; 89 F. 3d 966, 971 (3d Cir. 1996), or a custom that is a widespread, well-settled practice that constitutes standard operating procedures of the municipality so well-settled and permanent as to virtually constitute law, see Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown, 520 U.S.

397, 404 (1997); Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d
Cir. 1990).

The irreducible requirement for proof of a Monell claim
under any of the theories of "official policy or custom" is that
the plaintiff has suffered a constitutional violation in the
first place. Thus, the Supreme Court held in Los Angeles v.
Heller, 475 U.S. 796 (1986)(per curiam), that a municipal
defendant could not be held liable for a custom or policy of
permitting arrests without probable cause or excessive force in
arrests where the jury found that the plaintiff's arrest by the
city's police officer did not amount to an arrest without
probable cause or by use of excessive force. The Court noted:

> [N]either Monell . . . nor any other of our cases
> authorizes an award of damages against a municipal
> corporation based on the actions of one of its officers
> when in fact the jury has concluded that the officer
> inflicted no constitutional harm. If a person has suffered
> no constitutional injury at the hands of the individual
> police officer, the fact that the departmental regulations
> might have authorized the use of constitutionally excessive
> force is quite besides the point.

Id. at 799 (emphasis in original). Further, the Third Circuit
has held, "It is well-settled that, if there is no violation in
the first place, there can be no derivative municipal claim."
Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 238 n.5 (3d
Cir. 2013).

Here, as noted above, the County Defendants are entitled to
summary judgment of no liability for Plaintiff's claim of First

Amendment retaliation (Count Eight) and for age discrimination (Count Ten). Since there is no underlying violation of the constitution or federal laws, Plaintiff's claim for municipal liability against the County Defendants must also fail.

Finally, to the extent that Plaintiff belatedly asserts at oral argument that the County Defendants violated some right to an offer of employment because his name was on the Rice List, Plaintiff has cited to no provision of law entitling a Rice List officer to receive an offer of employment. The Rice List statute, N.J.S.A. 40A:14-180,[8] creates no property interest in an

---

[8] N.J.S.A. 40A:14-180 provides in relevant part:

    a.    The provisions of any other law to the contrary notwithstanding, the appointing authority of a county or municipality . . . has established an maintains a police . . . **may appoint** a member or officer of the county or municipal police department . . . any person who:

        (1)    was serving as a law enforcement officer in good standing in any State, county or municipal law enforcement department or agency . . . ; and

        (2)    satisfactorily completed a working test period in a State law enforcement title or in a law enforcement title in a county or municipality which has adopted Title 11A, Civil Service, of the New Jersey Statutes or sastifactorily completed a comparable, documented probationary period in a law enforcement title in a county or municipality which has not adopted Title 11A, Civil Service; and

        (3)    was, for reasons of economy, terminated as a law enforcement officer within 60 months prior to the appointment. . . .

offer of employment for one who was terminated from a police department by reasons of economy. The Rice List is simply "a civil service procedure whereby law enforcement officers laid off by a government agency for reasons of economy can be placed on the list and are eligible for appointment as a law enforcement officer within the state with preference on the list." Rojas v. Cty. Of Passaic, 2007 WL 773755, at *2 (D.N.J. 2007), quoted in Hudson Cty. P.B.A. Local 334 v. Cty. of Hudson, 2013 WL 1182161, at *2-3 (N.J. Super. Mar. 15, 2013).

The Rice List recognizes certain types of prior police service by a law enforcement officer who was in good standing, to be deemed sufficient for consideration for future hiring; here, Plaintiff's eligibility for a position with the Camden County Police Department is not in dispute, with or without the Rice List. The statute and case law are clearly permissive, not mandatory, and nothing suggests that a municipality – here, Camden County – was obliged to extend offers of employment to Camden City's former officers whose names appeared on a Rice List. Had Plaintiff applied for employment with the Camden County Police Department - which he did not - he would, at most, have been deemed eligible for an appointment by Camden County within the 60-month window of N.J.S.A. 40A:14-180(a)(3). Thus,

---

(emphasis added).

Plaintiff's claim that he was not selected for employment from the Rice List due to retaliation (or some sort of due process violation) is unfounded. Moreover, even if the Rice List gave rise to a legitimate expectation of specific employment with a law enforcement agency – which it does not – Plaintiff has produced no evidence in this four-year-old case to contradict the County Defendants' assertion that they have never used a Rice List to recruit or appoint any individual to a position with the Camden County Police Department.

Again, even with respect to his unplead Rice List claim of a deprivation of a right to an offer of employment, Plaintiff's underlying claim fails and no <u>Monell</u> liability can attach to these County Defendants. Summary judgment will be granted in favor of the County Defendants on Count Nine.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant the County Defendants' motion for summary judgment on Counts Eight, Nine, and Ten. The Court will also grant in part and deny in part the County Defendant's motion to strike Plaintiff's Hardwick Declaration. An accompanying Order will follow.


**May 23, 2018**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge