```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN A. SOSINAVAGE, | 1:14-cv-3292-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| POLICE CHIEF JOHN SCOTT THOMSON, et al., | |
| Defendants. | |

Appearances:

CHERYL L. COOPER
LAW OFFICES OF CHERYL L. COOPER
342 EGG HARBOR ROAD
SUITE A-1
SEWELL, N.J. 08080

  *On behalf of Plaintiff*

BETSY G. RAMOS
EDWARD FRANK KUHN, III
MICHELLE L. COREA
CAPEHART & SCATCHARD
8000 MIDLANTIC DRIVE
SUITE 300
MOUNT LAUREL, N.J. 08054

  *On behalf of Defendants*

**HILLMAN**, District Judge

   Pending before the Court is Defendants John Scott Thomson, Louis Vega, Michael Lynch, Orlando Cuevas, and the City of

Camden's ("Defendants") unopposed[1] motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF 336). For the reasons expressed below, Defendants' motion for summary judgment will be granted.

I. **Background**

Plaintiff John A. Sosinavage ("Plaintiff") served as a member of the Camden City Police Department ("CCPD") from approximately September 1994 to May 2013. (ECF 44 at ¶ 5). Plaintiff was promoted to the position of lieutenant during the Summer of 2004 and was assigned to Internal Affairs until May 2009, when he was transferred to patrol. (Id. at ¶ 12).

Defendant Vega was hired as civilian police director of CCPD in August 2008. (Id. at ¶ 13). Defendant Thomson served as CCPD's chief of police, (id. at ¶ 5), while Defendant Cuevas and Defendant Lynch both served as deputy chiefs and inspectors, (id. at ¶ 6-7).

On May 22, 2014, Plaintiff filed the instant action against Defendants, (ECF 1), and thereafter twice amended the Complaint (ECF 4; ECF 44). Plaintiff's Second Amended Complaint alleges

---

[1] Plaintiff is represented in this matter by Cheryl Cooper, Esq. Ms. Cooper's renewed application to withdraw as Plaintiff's counsel was denied by Magistrate Judge Ann Marie Donio on August 24, 2021. (ECF 321, 322 (redacted)). Cooper did not appeal that order. Despite the denial of her motion to withdraw and notice of Defendants' motion for summary judgment, Cooper has failed to file opposition to the instant motion on her client's behalf.

ten counts, (ECF 44), of which seven apply to Defendants and are thus at issue here, (ECF 336-2 at ¶ 2).[2] The Court summarizes the relevant counts by separating them into three general groups as follows.

### A. Violations of the New Jersey Conscientious Employee Protection Act (Counts 1, 2, 3, and 6)

Counts 1, 2, 3, and 6 of Plaintiff's Second Amended Complaint allege violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -14. During Plaintiff's tenure in Internal Affairs, CCPD was under a consent decree for irregular Internal Affairs practices and Plaintiff was tasked with ensuring compliance with the decree and New Jersey Attorney General ("NJAG") Guidelines. (ECF 44 at ¶¶ 17, 20). Plaintiff claims that Vega expressed a desire to impose fear on CCPD officers and reprioritize Internal Affairs with a focus on rules infractions. (Id. at ¶¶ 38-39). Vega also reportedly sought issuance of a firearm in December 2008, after which Plaintiff contacted the Camden County Prosecutor's Office ("CCPO") and learned that Vega was ineligible for a firearm without additional paperwork. (Id. at ¶¶ 50-54). Plaintiff was thereafter allegedly instructed by Thomson to not

---

[2] In a May 23, 2018 opinion, Judge Jerome B. Simandle granted summary judgment in favor of Camden County and individual Defendants in their capacities as members of the Camden County Police Department as to Counts 8, 9, and 10 of Plaintiff's Second Amended Complaint. (ECF 184).

3

contact counsel without first consulting him and told that Plaintiff had complicated Thomson's relationship with Vega. (Id. at ¶ 59). Thomson also, according to Plaintiff, was of the stated belief that investigations of disciplinary matters made by high-ranking officers did not require subsequent investigations, (id. at ¶ 81), and ordered the completion of charges made against officers prior to the conclusion of investigations and despite Plaintiff's objections, (id. at ¶ 84-85).

Plaintiff claims that, due to his objections, he was retaliated against including being transferred from Internal Affairs and replaced by a sergeant; assigned the midnight shift, other unfavorable work hours, and more weekends than all other officers; required attendance at meetings without full compensation; and unfairly disciplined. (Id. at ¶ 106).

Plaintiff filed a state court action in April 2010[3] alleging improper practices and retaliation, (id. at ¶¶ 111-12), and spoke out against CCPD practices in his role as a union official, (id. at ¶¶ 115-16). His objections included allegations of improper application for off-duty pay by Cuevas, (id. at ¶ 119), and improper intervention by Thomson in that and other investigations, (id. at 124, 128), contributing to Count

---

[3] Plaintiff's complaint filed in New Jersey Superior Court was ultimately dismissed without prejudice. (ECF 184 at 11).

4

2. Counts 3 and 6 claim retaliation and damages stemming from Plaintiff's objections, (id. at ¶¶ 131-33), and reiterate and expound upon the same allegations, (id. at ¶¶ 154-86), including claims that Plaintiff was pressured into not making a complaint against Cuevas and suffered harassment and retaliation for doing so, (id. at ¶¶ 170, 186).

### B. Violations of Plaintiff's Speech Rights Under the United States and New Jersey Constitutions (Counts 4 and 5)

Plaintiff asserts that he was a public employee who spoke out on matters of public concern and that his state court action and objections to CCPD conduct and practices constituted protected speech under the United States Constitution. (See id. at ¶¶ 135-45). As a result of his protected speech, Plaintiff alleges harassment, intimidation, and retaliation. (Id. at ¶ 146). This same speech, according to Plaintiff, is protected under the New Jersey Constitution, (id. at ¶ 149), and because of such speech Plaintiff claims that he was retaliated against in the form of adverse employment actions, (id. at ¶¶ 151-52).

### C. 42 U.S.C.§ 1983 Claim (Count 7)

Plaintiff claims that individual Defendants' "acted under color of state law" and that Thomson, as chief of police, set out the policies and made final decisions on behalf of CCPD. (Id. at ¶¶ 189-92). Defendants Thomson, Lynch, and Cuevas created customs of manipulation, intimidation, and the like in

5

violation of NJAG Guidelines and the consent decree of which City administration was on notice, (id. at ¶¶ 193-201, 204), and Plaintiff claims that he was retaliated against in the form of transfer, harassment, schedule manipulation, and improper discipline due to his speaking out, (id. at 205-06).

## II. Discussion

### A. Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 1983 and the United States Constitution. 28 U.S.C. § 1331. It has supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a).

### B. Summary Judgment Pursuant to Rule 56

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" when "its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (quoting Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015)). "All facts and inferences must be construed in the light most favorable to the non-moving party." Candido v.

6

Hogsten, 316 Fed. Appx. 128, 129 (3d Cir. 2008). It is the movant's responsibility to show an absence of genuine issue of material fact, after which the burden shifts to the nonmovant, which "must present actual evidence that creates a genuine issue as to a material fact for trial." V.C. by Costello v. Target Corp., 454 F. Supp. 3d 415, 422 (D.N.J. Apr. 14, 2020); see also Fed. R. Civ. P. 56(c) (setting forth how genuine disputes of fact may be supported).

This same general analysis applies even when a summary judgment motion, as here, is unopposed. Rakowski v. City of Brigantine, No. 19-21847, 2022 WL 326992, at *2 (D.N.J. Feb. 3, 2022) (citing Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168 (3d Cir. 1990)). However, Local Civil Rule 56.1 provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). It therefore requires "an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld" when a summary judgment motion is appropriately filed, supported, and unopposed. See Hines v. Lanigan, No. 17-2864, 2021 WL 4963252, at *2 (D.N.J. Oct. 26, 2021).

It is with this standard in mind that the Court will analyze to determine whether any elements of Plaintiff's respective claims are unsupported. See Wood v. Detwiler, 782

7

Fed Appx. 103, 105 (3d Cir. 2019) ("Defendants are entitled to summary judgment because Wood failed to offer evidence supporting the essential elements to his Eighth Amendment claims.").

**III. Analysis**

    **A.    Plaintiff's CEPA Claims**

"CEPA is remedial legislation and must therefore be construed liberally in employees' favor." Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 240 (3d Cir. 2016). CEPA prohibits retaliatory action by an employer against an employee who objects to or refuses to participate in an activity, policy, or practice that the employee reasonably believes violates a law, rule, or regulation; is fraudulent or criminal; or is contrary to public policy involving public health, safety, welfare, or the environment. N.J.S.A. 34:19-3(c). To establish a CEPA retaliation claim, the employee must demonstrate that (1) they reasonably believed that the employer's conduct violated a law, regulation, or clear mandate of public policy; (2) they performed a whistleblowing activity; (3) the employer took an adverse employment action against them; and (4) there was a causal nexus between the whistleblowing activity and adverse employment action. Greenman v. City of Hackensack, 486 F. Supp. 3d 811, 829-30 (D.N.J. Sept. 12, 2020) (citing Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398,

404 (3d Cir. 2007) and Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003)).

Important to the initial prong of the analysis is the employee's objectively reasonable belief of the employer's action is illegal or contrary to public policy and that, if the violation is of a policy, that that policy be clear and unambiguous. See Houston v. Twp. Of Randolph, 934 F. Supp. 2d 711, 743 (D.N.J. Mar. 21, 2013). Whistleblowing activities are interpreted from the list of actions expressly protected under CEPA, see Marra v. Twp. of Harrison, 913 F. Supp. 2d 100, 105 (D.N.J. Dec. 19, 2012), including objection or refusal to participate in conduct believed to be illegal, fraudulent, criminal, or against public policy, see N.J.S.A. 34:19-3(c).

Finally, CEPA defines "[r]etaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Courts have concluded that employers' actions in CEPA claims must "impact[] . . . the employee's 'compensation or rank' or be 'virtually equivalent to discharge,'" see Fraternal Order of Police, 842 F.3d at 241-42 (quoting Caver v. City of Trenton, 420 F.3d 243, 255 (3d Cir. 2005)); however, broader sets of employer actions have been found to be sufficiently adverse, Greenman, 486 F. Supp. 3d at 833-34 (collecting cases and noting

9

a split among courts).

CEPA analyses are conducted with a burden-shifting analysis similar to that of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Houston, 934 F. Supp. 2d at 743 (citing Winters v. N. Hudson Reg'l Fire & Rescue, 50 A.3d 649, 662 (N.J. 2012)). Therefore, once the employee establishes a prima facie retaliation claim, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action and, if such a reason is provided, the burden shifts once more to the employee to show that the actual reason for the adverse action was retaliation. Id. at 743-44 (citing Winters, 50 A.3d at 662).

The Court first notes that Defendants' conduct, in part by Plaintiff's own admissions, does not rise to the level of a violation of law or policy. Interrogatories and deposition testimony presented reveal that Plaintiff was never required to contradict CCPO guidance and issue Vega a weapon and that Vega did not thereafter pursue issuance of a weapon. (Pl. Dep. Tr. at 126:17 to 127:10; Vega Answer to Pl. Interrog. No. 3). Further, an investigation concluded that Cuevas's off-duty hours issue was an isolated incident of improper documentation with no evidence of a crime or violation of an ethical standard. (ECF 336-3 at 182-86). Plaintiff testified that it was within Thomson's discretion to prioritize Internal Affairs matters such

10

as home visits for sick officers and monitoring gas pumps, (Pl. Dep. Tr. at 64:17 to 65:19), and two complaints central to Plaintiff's allegations of improper or incomplete investigations resulted in sustained charges, (id. at 142:21-24; ECF 336-3 at 168-75).

Even if the Court was to assume that Plaintiff, at the time, objectively and reasonably believed Defendants' practices to be improper and that his objections and reporting constituted whistleblowing activity, Plaintiff fails to show that the actions thereafter taken negatively affected his compensation or rank, was "virtually equivalent to discharge," or even met a lesser standard such as suspension, demotion, changes in benefits, or the like.[4]  See Greenman, 486 F. Supp. 3d 833-34. Plaintiff was indeed transferred to patrol and initially worked the midnight shift before switching to a slightly more favorable three-to-one shift.  (Pl. Dep. Tr. at 161:13 to 162:7). However, Plaintiff's rank and compensation increased as these shifts were associated with greater pay, (id. 179:5-15), and Plaintiff was promoted to acting captain a few months after his transfer, (id. at 39:19-25).  Changes to overtime pay and shift length complained of were made department-wide and were not

---

[4] The record shows that Plaintiff was eventually remanded to the position of sergeant due to layoffs and budgetary reasons.  (Pl. Dep. Tr. at 210:2-6).

11

unique to Plaintiff, (id. 113:21 to 114:9, 114:18 to 116:9), and reprimands against Plaintiff have either not been disputed or were properly investigated resulting in exoneration or sustained discipline in the form of reprimands or counseling, (id. at 193:13 to 194:5, 194:14 to 195:17, 199:19 to 201:24, 203:14 to 204:17, 206:24 to 207:4, 207:20 to 209:6, 209:10 to 210:1, 210:20 to 212:8, 214:1 to 215:20, 217:11 to 218:4; Thomson Answer to Pl. Interrog. No. 2). None of these incidents resulted in a decrease in pay, rank, or benefits. (Id. at 195:18-23, 213:15-19).

Finally, accepting – as the Court does not – that Plaintiff has articulated a prima facie CEPA claim, Defendants offer legitimate nondiscriminatory reasons for actions that impacted Plaintiff's employment. Vega's answers to interrogatories explain that Plaintiff was transferred to patrol so that he could familiarize himself with patrol processes and systems prior to becoming a captain, (Vega Answer to Pl. Interrog. No. 3), an explanation supported by Plaintiff's eventual promotion, (Pl. Dep. Tr. at 39:19-25). Plaintiff was replaced by a sergeant due to the sergeant's strong interview skills and relevant background experience. (Id. at 125:20 to 126:3). Shifts were expanded from ten to twelve hours department-wide due to a reduction in officers. (Id. at 114:18 to 115:12). As stated, complaints against Plaintiff were investigated and

resulted in sustained discipline or exoneration. (Id. at 193:13 to 194:5, 194:14 to 195:17, 199:19 to 201:24, 203:14 to 204:17, 206:24 to 207:4, 207:20 to 209:6, 209:10 to 210:1, 210:20 to 212:8, 214:1 to 215:20, 217:11 to 218:4).

Plaintiff fails to demonstrate that these offered explanations are pretextual. See Houston, 934 F. Supp. 2d at 744. Therefore, the Court concludes that Plaintiff fails to sustain his CEPA claims.

### B. Plaintiff's Protected Speech Claims

To sustain a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that (1) they engaged in constitutionally protected conduct, (2) the employer engaged in retaliation sufficient to deter an individual of ordinary firmness from exercising their constitutional rights, and (3) there was a causal nexus between the protected conduct and retaliation. Javitz v. Cnty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019) (citing Baloga, 927 F.3d at 752)). Though this test resembles that for a CEPA claim, see Clayton v. City of Atlantic City, 722 F. Supp. 2d 581, 590 (D.N.J. June 30, 2010), the employer's actions need not amount to dismissal, see Maddox v. City of Newark, 50 F. Supp. 3d 606, 633 (D.N.J. Sept. 26, 2014), or even succeed in actual deterrence, Mirabella v. Villard, 853 F.3d 641, 650 (3d Cir. 2017). "The Free Speech Clause contained within the New Jersey Constitution 'is

13

generally interpreted as co-extensive with the First Amendment,'" therefore this same analysis is applicable to Plaintiff's federal and state claims. See Palardy v. Twp. of Millburn, 906 F.3d 76, 80 (3d Cir. 2018) (quoting Twp. of Pennsauken v. Schad, 733 A.2d 1159, 1169 (N.J. 1999)).

Public employees are subject to a more limited speech right than the general public and are insulated from retaliation only if their speech is of a matter of public concern and their speech interests outweigh the government's interest in an efficient workplace free from disruption. Id. at 81 (citing Connick v. Myers, 461 U.S. 138, 147 (1983) and Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). The speech of public employees is protected when (1) the public employee speaks as private citizen, (2) the statement made is of a matter of public concern, and (3) the government employer is not justified in treating the employee differently than a member of the public. Id. (citing Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)). Speech made in advocacy on behalf of a union is not made as a private citizen. See Foster v. Twp. of Pennsauken, No. 16-5117, 2017 WL 2780745, at *10 (D.N.J. June 27, 2017) (referring to statements made as part of contract negotiations and citing Hill v. City of Phila., 331 Fed. Appx. 138, 142 (3d Cir. 2009)).

The Court first notes that Plaintiff's Complaint states

14

that he "spoke out in both his official and private capacities." (ECF 44 at ¶ 137). Based on context from elsewhere in the Complaint, it appears as though Plaintiff is referring to speech that he made in his capacity as a union vice president. (Id. at ¶¶ 143, 217-19 (referring, in part, to allegations made regarding Camden County Police Department hiring practices)). Plaintiff does not clearly refer to speech made outside his official positions within CCPD or as a union official. The Court therefore holds that Plaintiff was not acting as a private citizen while making the speech in question, see Foster, 2017 WL 2780745, at *10, and is thus subject to a reduced speech right, see Palardy, 906 F.3d at 81.

Even assuming that Plaintiff's speech was constitutionally protected, Plaintiff fails to satisfy the second prong of the analysis – that Defendants engaged in retaliation sufficient to deter an individual of ordinary firmness – for similar reasons as stated above with respect to Plaintiff's CEPA claims. While Plaintiff need not allege retaliation tantamount to dismissal, see Maddox, 50 F. Supp. 3d at 633, "'criticism, false accusations, or verbal reprimands' generally do not provide the basis for demonstrating that a public official's speech would deter a person of ordinary firmness," Shutt v. Miller, 724 Fed. Appx. 112, 114 (3d Cir. 2018) (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) and referencing press statements

15

referring to the plaintiff as a "liar" who committed various crimes).

The Court finds, for instance, that Thomson's demands that charges be completed in short order, (Pl. Dep. Tr. at 93:13 to 94:15), and comments that Plaintiff was making his relationship with Vega difficult, (id. at 126:10-16), constitute general verbal criticism not rising to the level of retaliation.  Nor can the Court find that a transfer that resulted in higher pay and an eventual promotion, (id. at 39:19-25, 179:5-15), department-wide changes in overtime pay and shifts, (id. at 113:21 to 114:9, 114:18 to 116:9), or disciplinary matters that were sustained or cleared based on their own merit, (id. at 193:13 to 194:5, 194:14 to 195:17, 199:19 to 201:24, 203:14 to 204:17, 206:24 to 207:4, 207:20 to 209:6, 209:10 to 210:1, 210:20 to 212:8, 214:1 to 215:20, 217:11 to 218:4; Thomson Answer to Pl. Interrog. No. 2), would deter an individual of ordinary firmness from exercising their speech rights.

The Court therefore holds that Plaintiff has failed to support his federal and state protected speech claims.

### C. Plaintiff's 42 U.S.C.§ 1983 Claim Against the City

Finally, Plaintiff brings forth a claim under 42 U.S.C. § 1983 against the City of Camden.  To succeed in such a § 1983 claim, a "plaintiff must prove (1) that the alleged injury was caused by a person acting under the color of state law; and (2)

16

that the conduct deprived the plaintiff of a federally protected right." Adams v. Cnty. of Erie, 558 Fed. Appx. 199, 202 (3d. Cir. 2014) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).  A local government may not be sued in a § 1983 claim purely due to the conduct of its employees, but rather the plaintiff's injury must be caused by the government's policy or custom.  Chernavsky v. Twp. of Holmdel Police Dep't, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Policies are made by "an official statement of a 'decisionmaker possessing final authority to establish municipal policy,'" while custom is evidenced by "a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'"  Id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990)).

    Plaintiff here clearly outlines Defendants' government positions and Thomson's role in setting forth CCPD policies that Plaintiff claims included intimidation, harassment, use of Internal Affairs for inappropriate means, and the like.  However, even if the Court was to accept as true that Plaintiff was harmed by Defendants while they were acting in their official capacities, Plaintiff does not identify any official statement or longstanding pattern of conduct sufficient to establish a policy or custom.  This is particularly so in light of evidence that discipline was ultimately sustained in cases

17

involving Plaintiff and other matters central to his claims. (Pl. Dep. Tr. 107:2-103, 142:21-24, 193:13 to 194:5, 194:14 to 195:17, 199:19 to 201:24, 203:14 to 204:17, 206:24 to 207:4, 207:20 to 209:6, 209:10 to 210:1, 210:20 to 212:8, 214:1 to 215:20, 217:11 to 218:4; ECF 336-3 at 168-75).

Further, Plaintiff does not articulate a protected right, other than the speech right the Court has found was not infringed, that was violated by Plaintiff's transfer, discipline, and the like.  See Mattern v. City of Sea Isle, 131 F. Supp. 3d 305, 313 (D.N.J. Sept. 15, 2015) ("The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" (quoting Nicini, 212 F.3d at 806)).  The Court therefore holds that Plaintiff's § 1983 claim against the City of Camden, too, must fail.

**IV. Conclusion**

For the reasons stated above, Defendants' motion for summary judgment will be granted.  An Order consistent with this Opinion will be entered.

Date: November 2, 2022          s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.